LOVELL–McCONNELL MFG. CO. et al. v. INTERNATIONAL AUTOMOBILE LEAGUE.

(Circuit Court of Appeals, Second Circuit. January 13, 1913.)

No. 78.

PATENTS (§ 308*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION—ENFORCEMENT.

Where a preliminary injunction was granted restraining defendant, which was an association of automobile owners, from selling to its members horns covered by complainant's patents at a discount from the prices fixed by the license contracts under which they were sold by complainant, a scheme by which defendant charged the full price, but returned to the purchasing members a check for the amount of the discount previously given, payable to some charity designated by the purchaser, was a palpable device for evading obedience to the injunction, and required its modification.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 504–506; Dec. Dig. § 308.*]

Appeal from the District Court of the United States for the Western District of New York; John R. Hazel, Judge.

Suit in equity by the Lovell-McConnell Manufacturing Company and others against the International Automobile League. From an or-

der granting a preliminary injunction responding in part only to the prayers of the bill, complainants appeal. Modified and affirmed.

See, also, 199 Fed. 989.

George C. Dean, of New York City (Drury W. Cooper, of New York City, of counsel, and Herbert H. Dyke, of Newark, N. J., on the brief), for appellants.

Corcoran & Corcoran, of Buffalo, N. Y. (J. B. Corcoran, of Buffalo, N. Y., of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The complainants make automobile horns (the Klaxon horn) under a patent and sell the same to dealers under a complicated form of license, which, among other things, provides that the purchasers shall not resell at less than a stated price. The injunction which was issued prohibits defendants from—

"selling or offering for sale, directly or indirectly, any of complainants' horns, marketed and sold by complainants under their conditional licenses set forth in tags or labels upon or secured to said horns, for less than the price designated by complainants at which said horns must be sold to the public, as shown by the tags and labels secured to said horns by the complainants."

It is not necessary to set forth the various other preliminary injunctions which complainants now ask for, because in our opinion they are of the sort that should be considered only at final hearing, especially because complainants' theory as to this additional relief apparently is that there has been some forfeiture of license, so that the defendant is to be regarded as never having had a license, and therefore as an infringer. Since the answer attacks the validity of the patent, which defendant may properly do, if he is not a licensee, and an extensive prior art is set up, the questions raised upon this argument should be left for disposition at final hearing.

In one particular, however, complainants are entitled to some further relief. The defendant is a concern operated on a membership and profit-sharing plan, whereby each member is obliged to pay a membership fee of $10. It buys various automobile fittings and accessories at manufacturers' prices, and before this injunction sold these horns to its own members at a considerable abatement from the price fixed by the manufacturer for sale to the public. After the injunction was issued, it sent a circular to all its members, notifying them that it could no longer sell horns to them at cut prices. The same circular included the following offer:

"While the Klaxon people may insist upon the League charging its members the retail price, they surely cannot prevent the League giving the profits to charity. If you are insistent upon having a Klaxon (though, in our opinion, the Newtone horn, described on another page, is equal or preferable), send us your check for the full retail price, as given above. We will sell it at no other price. Then give us the name of two charitable institutions in your vicinity deserving of assistance, and we will select one of them and draw our check to its order for the difference between the cost to us and the retail price, forwarding the check in your care, so that we may be sure it will reach its proper destination."

This seems to be a very flimsy device for evading obedience to the injunction against cutting prices. Most of the individuals whose con-

'dition in life is such that they can afford to own and use automobiles are presumably in the habit of making regular contributions at stated periods to one or more worthy charitable institutions. When defendant tells them that, if they will buy from it Klaxon horns at the price they must pay everywhere else, it will send them a check for $8 or $9 on each horn, drawn to the order of such charitable institution as they may designate, it is naturally to be expected that they will accept the offer, will take the draft, add to it sufficient to make up their usual contribution, and pass the same on to the institution.

Probably there are other persons whose charitable vision is bounded by the horizon of themselves and their individual families. It would be an easy thing for one of them to send on two fictitious titles of what seemingly are charitable institutions, but which in reality represent merely the distress produced in this family by the payment of the full list price for a Klaxon horn. Upon receiving the draft, he could write the fictitious name of the payee, and then indorse, deposit, and collect it in his own name. The suggestion that defendant would undertake any investigation to discover whether or not the selected "charitable institution" is real, or fictitious puts a severe strain on one's credulity. We think this devotion of the discount from list price to "charitable institutions" is a mere evasion of the order, and that the present injunction should be modified, by inserting a clause which will put a stop to the practice.

As thus modified, the order is affirmed, without costs.